IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LAUREN MASON | § | |
| | § | |
| V. | § | A-15-CV-64-LY |
| | § | |
| RCI DINING SERVICES (ROUND ROCK), | § | |
| INC. d/b/a RICK'S CABARET | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant RCI Dining Services (Round Rock), Inc. d/b/a Rick's Cabaret's Motion to Dismiss this Proceeding and Compel Arbitration, filed on February 23, 2015 (Dkt. No. 7); Plaintiff's Response, filed on March 2, 2015 (Dkt. No. 11); and Defendant's Reply, filed on March 9, 2015 (Dkt. No. 13). The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.   GENERAL BACKGROUND

Plaintiff Lauren Mason brings this suit against RCI Dining Services (Round Rock), Inc. d/b/a Rick's Cabaret ("Rick's"), claiming it intentionally discriminated against her based on her gender and pregnancy in violation of Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act. Mason performed services as an "Entertainer/Dancer" at Rick's beginning in the spring of 2013. Dkt. No. 4 at 2 (Amended Complaint). Her relationship with Rick's was that of an independent contractor, not an employee. In November 2013, Mason learned that she was pregnant. *Id*. When her manager discovered her pregnancy, he told her that she would have to stop

working as a dancer, but that she could start working for Rick's as a server. *Id*. She was told that she would be switched from an independent contractor to an employee when she became a server. *Id*. On January 18, 2014, two days before she expected to begin working as a server, Mason alleges that the club's talent manager told her to stop dancing and "took her out of the computer." *Id*. Mason then waited while three managers talked in the club's office. *Id*. at 3. When they called her in, they informed her that she was not going to be permitted to stay on as a server. They stated that her condition made her too much of a liability, as the club allowed smoking that could harm her baby. *Id*. Mason also alleges that they told her that a pregnant server was "not the look that we want representing the establishment, especially since you'll be serving alcohol." *Id*. The managers told Mason that she could contact Rick's after her baby was born.

Mason makes no claims regarding the ending of her independent contractor relationship with Rick's. Instead, she alleges that Rick's "intentionally discriminated against [her] because of her gender and pregnancy in violation of Title VII by unlawfully refusing to hire her" as a server. *Id*. at 4. She also alleges that her "gender and pregnancy were a determining or motivating factor in [Rick's] decision not to hire [her] as a server," in violation of the Texas Commission on Human Rights Act. *Id*. Mason filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and received a right to sue from the EEOC before filing this suit. *Id*. at 3.

When Mason entered into her independent contractor relationship with Rick's, she signed an Entertainer License Agreement (the "License Agreement"). Dkt. No. 7-1. The agreement contained the following Arbitration clause:

> The parties agree that this Agreement is subject to binding arbitration pursuant to the Federal Arbitration Act (the "FAA), [*sic*] and any disputes under this Agreement or otherwise arising out of your use of the Premises involving Licensor or its parents, subsidiaries and/or affiliates will be governed and settled by an impartial independent appointed by the American Arbitration Association, Texas branch, and the determination of the arbitrator shall be final and binding (except to the extent there

> exist grounds for vacation of an award under applicable arbitration statutes). The parties agree that the AAA Optional Rules for Emergency Measures of Protection shall apply to any proceedings commenced under this Section 15. The arbitrator will have no authority to make any ruling, finding or award that does not conform to the terms and conditions of this Agreement. Each party shall bear its own costs in any arbitration. The arbitration provision contained herein shall be self executing and shall remain in full force after expiration or termination of this Agreement. In the event any party fails to appear at any properly noticed arbitration proceeding, an award may be entered against such party by default or otherwise, notwithstanding such failure to appear. The place of arbitration shall be Travis County, Texas. The arbitrator shall give effect insofar as possible to the desire of the parties hereto that the dispute or controversy be resolved in accordance with good commercial practice and the provisions of this Agreement. To the fullest extent permitted by law, the arbitrator shall apply the commercial arbitration rules of the American Arbitration Association and Title 9 of the U.S. Code, except to the extent that such rules conflict with the provisions of this Section 15 in which event the provisions of this Section 15 shall control.

Dkt. No. 7-1 at 5.  By signing the License Agreement, the parties also waived "any right to litigate such controversies, disputes, or claims in a court of law, and waive the right to trial by jury." *Id.* at 6.  Rick's contends that these provisions extend to Mason's complaint.  Accordingly, it requests that the Court dismiss this action and require Mason to arbitrate the dispute in accordance with the License Agreement.

## II. ANALYSIS

**A.     Applicable Law**

The Federal Arbitration Act ("FAA") requires a district court to stay judicial proceedings where a written agreement provides for the arbitration of the dispute that is the subject of the litigation. 9 U.S.C. § 3.  As the Supreme Court has observed, "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625-26(1985) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221(1985)) (internal citations omitted).  Thus, under the FAA, arbitration agreements

are considered "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Further, in the employment context, arbitration agreements are generally enforceable. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001).

In deciding a motion to compel arbitration under the FAA, courts generally conduct a two-step inquiry. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996).  First, the court determines "whether the parties agreed to arbitrate the dispute in question." *Id.* at 258 (citations omitted).  "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.*  If the court finds at step one there is an agreement to arbitrate, then at step two the court considers "whether legal constraints external to the parties' agreement foreclose[ ] the arbitration of those claims." *Id.* (internal quotation marks and citations omitted).  Finally, in this analysis, the party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity, and the court should resolve all doubts concerning the arbitrability of claims in favor of arbitration. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).; *Mitsubishi Motors*, 105 S.Ct. at 3353–54.

**B.      Do Plaintiff's claims fall within the scope of the arbitration clause?**

In response to Rick's motion, Mason makes only one argument: her claims do not fall within the scope of the License Agreement's arbitration clause. Dkt. No. 11 at 2.  She contends that the clause at issue is a "narrow" agreement that only requires arbitration for disputes "arising out of" the contract. *Pennzoil Exploration and Prod. Co. v. Ramco Energy Limited,* 139 F.3d 1061, 1067.  Such "narrow" agreements should be contrasted with "broad" agreements, which govern disputes that "relate to" or "are connected to" the contract.

Mason's reading is correct. The arbitration clause governed "any disputes under this Agreement or otherwise *arising out of* [Mason's] use of the Premises." Dkt. No. 7-2 at 5 (emphasis added). "Arising out of" is the precise language the Fifth Circuit held to connote a narrow arbitration agreement. Mason's agreement with Rick's made no mention of any disputes "related to" or "connected to" Mason's use of Rick's facility, the language connoting a broad arbitration agreement. Further, applying for employment as a waitress is not a "use of the Premises," so even if viewed more broadly, the agreement does not capture the dispute before the Court. While there are no magic words in contract drafting, the intent of the parties here is clear: the agreement covered any dispute involving Mason's independent contractor relationship with Rick's. It says nothing about a prospective employment relationship.

Indeed, the arbitration clause is contained in the License Agreement, which governed a particular relationship between Mason and Rick's: it allowed Mason to use Rick's club for her dance performances. *Id*. at 2. In consideration for the right to use and occupy the club, Mason paid Rick's a daily license fee. *Id*. at 2-3. The agreement makes clear that the relationship between Rick's and Mason is no more than that of licensor and licensee. *Id*. at 3. It expressly disclaims an employee/employer relationship. *Id*. at 3-4. Mason did not bring any claims related to or connected to this licensor/licensee relationship or its termination. Instead, she has alleged that Rick's refused to hire her as an employee for the wholly separate position of "server" because of her gender and pregnancy. This relationship—job applicant and potential employer—is in no way governed by the arbitration agreement. Indeed, "the facts alleged in support of the claim are completely independent of the contract and the claim could be maintained without reference to the contract." *Glassell Producing Co. V. Jared Res., Ltd.,* 422 S.W.3d 68, 76 (Tex. App.–Texarkana 2014, no pet.).

Parties seeking to overcome the federal policy favoring arbitration have a heavy burden. Here, Mason has shown "with positive assurance" that the License Agreement's arbitration clause "is not susceptible of an interpretation which would cover the dispute at issue." *Pennzoil*, *supra*., at 1067.  Accordingly, Rick's motion should be denied.

### III.  RECOMMENDATION

Based upon the foregoing, the Magistrate Court **RECOMMENDS** that the District Court **DENY** Defendant RCI Dining Services (Round Rock), Inc. d/b/a Rick's Cabaret's Motion to Dismiss this Proceeding and Compel Arbitration (Dkt. No. 7).

### IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is

directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

      SIGNED this 14th day of May, 2015.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE